IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

4 STAR GENERAL CONTRACTING, INC.                                    PLAINTIFF

V.                              CASE NO. 2:22-CV-02036-PKH

UNITED FIRE & CASUALTY COMPANY                                DEFENDANT

## DEFENDANT'S POST-HEARING BRIEF IN SUPPORT OF MOTION FOR SANCTIONS

Defendant, United Fire & Casualty Company (United Fire), submits this Post-Hearing Brief in Support of its pending Motion for Sanctions (Doc. 72). The evidentiary hearing was conducted on November 14, 2023 (Doc. 84). In its Order to Show Cause (Doc. 82) the Court stated it was considering sanctions against Plaintiff, 4 Star General Contracting, Inc. (4 Star), 4 Star's counsel Benjamin Doyle (Doyle), 4 Star employee Allen Satnes (Satnes) and 4 Star employee Jonathan Kinder (Kinder). This brief will collectively refer to 4 Star, Doyle, Satnes, and Kinder as "Respondents."

## I.
### INTRODUCTION

Clear and convincing evidence establishes that the Court should impose sanctions against the Respondents. The Court should, at a minimum, dismiss 4 Star's Complaint with prejudice. As to other sanctions against 4 Star and sanctions against the other Respondents, other than to urge the imposition of some form of sanction against all Respondents, United Fire takes no position on the form or severity of those sanctions, leaving it to the Court's discretion.

At stake is the integrity of the judicial process. Our system of justice depends on adherence to the rule of law. In the conduct of civil litigation, the Federal Rules of Civil Procedure (FRCP) embody the rule of law, with the end goal that all parties have the unfettered right to present all

relevant evidence at trial.  Essential to this guaranty is the right to compulsory attendance of witnesses through the use of subpoena power.  The lawyer-issued subpoena pursuant to Rule 45 are in legal effect "mandates of the court."  In the 1991 amendments to Rule 45, the Advisory Committee Notes state:

> The 1948 revision of Rule 45 put the attorney in a position similar to that of the administrative agency, as a public officer entitled to use the court's contempt power to investigate facts in dispute.  Two courts of appeals have touched on the issue and have described lawyer-issued subpoenas as mandates of the court.  Waste Conversion, Inc. v. Rollins Environmental Services (NJ), Inc., 893 F.2d 605 (3d Cir. 1990); Fisher v. Marubent Cotton Corp., 526 F.2d 1338, 1340 (8th Cir. 1975).  Cf. Young v. United States ex rel Vuitton et Fils S.A., 481 U.S. 787, 821 (1987) (Scalia, J., concurring).  This revision makes the rule explicit that the attorney acts as an officer of the court in issuing and signing subpoenas.

Thus, the intentional interference with a party's subpoena is the same as refusing to obey a court order.

This right is so fundamental that the United States Congress and the Arkansas General Assembly have both made it a crime to intentionally interfere with that right.  The federal criminal statute makes it a crime to "influence, delay, or prevent the testimony of any person in an official proceeding (or) cause or induce any person to . . . evade legal process summoning that person to appear as a witness . . . in an official proceeding[.]"  18 U.S.C. § 1512(b).  See also, Ark. Code Ann. § 5-53-108 and § 5-53-110.

When a party and its lawyer conspire to induce one of the company's employees to avoid a lawfully issued subpoena, this fundamental right, guaranteed by the FRCP and federal and state law, is trampled upon.  A corporation, its executives, and its lawyers have considerable economic power to coerce and pressure a low level employee.  When that power is used to suppress the truth from being heard in a federal trial, through intentional interference with the opposing party's right to subpoena witnesses, the conduct is inexcusable justifying the most severe sanctions.

That sanctionable conduct occurred here is not seriously questioned by the Respondents. The recordings of witness Justin Smith obviously cannot be refuted. They establish beyond any doubt that the Respondents pressured and coerced Smith to unlawfully avoid the subpoena. He was paid money to flee the jurisdiction. His superiors and the company's lawyer instructed him to dodge the subpoena. Kinder and Satnes chose not to testify at the hearing. Doyle admitted the accuracy of the recordings. His asserted justifications were not credible. But even if truly believed by Doyle, his rationalizations are no excuse for breaking the law and interfering with the administration of justice. They do not mitigate the sanctionable conduct.

In its filings to date (Docs. 80, 83), 4 Star argues that, while its lawyer may have engaged in sanctionable conduct, the Court should decline to sanction it because: (1) United Fire was ultimately not harmed because the June trial was continued and Smith was ultimately served with a subpoena for the November trial (the no harm defense); and (2) Smith's potential testimony was not that important to the issues in this case (the irrelevant defense). Neither of these defenses hold water.

The "no harm defense" fails for two reasons. First, the law does not condition an award of sanctions on a showing of prejudice to the aggrieved party. By invoking the inherent power of the Court to sanction, the focus is on the harm done to the judicial process and the administration of justice by sanctionable conduct. Second, whether United Fire's defense of this case is prejudiced by the witness tampering cannot be determined until trial on the merits unfolds and the testimony of Smith is evaluated by the jury in context. The distraction created by the chaos surrounding Smith's testimony injects highly charged issues in this case, the ultimate effect of which cannot be gauged.

The "irrelevant defense" was flatly refuted by Smith's testimony at the hearing. As the sole project manager for the roof project at issue in this case, he had unique knowledge into 4 Star's

construction means, methods, subcontractors, and overhead.  The fact that 4 Star broke the law to prevent his trial testimony is prima facie evidence of relevance.

The affront to the integrity of this Court cannot be ignored.  The Court should sanction 4 Star by dismissing this lawsuit with prejudice, and imposing additional sanctions against all the Respondents as it deems appropriate.

## II.
## THE EVIDENCE

A.    The evidence against 4 Star, Satnes, and Kinder.

On May 30, 2023 when United Fire filed its witness list identifying Smith as a witness, he received a telephone call from Satnes who instructed him to avoid the subpoena.  Satnes is a key witness in this case.  His deposition was taken.  He was the sales manager over the Stainless job. (Tr. 33).  Satnes approved all changes in scope on the project.  (Tr. 33).  In his initial call to Smith, Satnes told him "to go home and pack up and leave out of state . . . to avoid getting subpoenaed." (Tr. 40-41).  In his recorded telephone conversation with Smith, Satnes tampered with the witness by instructing him to avoid the subpoena.  "If they don't subpoena you and you don't get served you don't legally have to show up."  (Tr. 47).  He admits putting $2,100 in cash in an envelope in Smith's drawer.  (Tr. 46).  He informed Smith that if he needed more money 4 Star will "make sure you get what you need."  (Tr. 46).

Satnes informed Smith that "Pip" "knows all about this."  Satnes told Smith to "call Pip" if he needed more money.  (Tr. 46).  The evidence established that "Pip" was Peter Hutton (Hutton), the CEO/COO of 4 Star.  (Tr. 34, 49) Enty deposition testimony at p. 13, Ex. 2.

Whether Hutton was truly aware of and a participant in the witness tampering is irrelevant. If true, the witness tampering goes straight to the top of the 4 Star corporate hierarchy justifying the most severe sanctions.  If Satnes's statements about Hutton were not true, they were made solely for

the purpose of coercing and intimidating Smith, making Satnes's conduct, which was undertaken on behalf of 4 Star, all the more reprehensible.

Kinder is likewise an important witness in this case. His deposition was taken. He prepared the first roof repair estimate for 4 Star. His competence and credibility are key issues for trial. Kinder participated in the telephone conversation between Smith and Doyle, thus presenting himself as the company presence in the company's lawyer's instructions to Smith.

Kinder was a direct participant in the Doyle call in which he specifically informed Smith: "you'll find the money in cash." (Tr. 51). Doyle told Smith that "Jonathan wanted me to call you to assure you you're not in trouble." This establishes Kinder's direct and active involvement in the witness tampering.

The fact that Satnes and Kinder are both witnesses for 4 Star in this case is an important fact in the Court's consideration of sanctions. With knowledge that their testimony would be compared with the testimony of other 4 Star employees at trial, they made the conscious decision to induce a company employee to avoid a subpoena. These company witnesses did not want another company witness to contradict their testimony.

It was 4 Star's call to pay off the witness. Satnes informed Doyle of the decision to pay money. (Tr. 104). 4 Star takes the position that the witness tampering was all Doyle's doing. (See, 4 Star's Response in Opposition to Motion for Sanctions, "Doyle sought to delay Defendant's ability to serve a trial subpoena." Doc. 80 at p.1). Satnes and Kinder appear to take the same position. (See, Mr. Kannett' s cross examination of Doyle at Tr. 122-124.) Doyle testified it was his idea that Smith leave the jurisdiction. (Tr. 123). Regarding the money, he testified that he "thinks there was a discussion about whether to continue to pay Justin . . . and whether or not travel expenses would be appropriate." (Tr. 124). Doyle did not testify that the money was his idea, only that it was

discussed.  If the hypothetical question was asked, he would have told them "it was okay" to pay the money to Smith.  (Id.)

Satnes first called Smith and told him that he would be paid money to leave the jurisdiction before the conference call between Kinder, Smith and Doyle.  (Tr. 40-45).  The recorded call with Satnes was after that call.  Smith received a call from both Satnes and Kinder about avoiding the subpoena before he ever talked to Doyle about it.  (Tr. 65).  Doyle testified he first learned of the subpoena on May 30 when a copy was emailed from the office of United Fire's lawyer.  (Tr. 98-99).  The first thing he did was contact Satnes.  (Tr. 99).  He claims to have told Satnes that "it's best (Smith) not meet with the process server."  (Tr. 102).  The record is silent on who first came up with the idea of paying money to Smith.  But it is undeniable that 4 Star, through Satnes, Kinder, and perhaps Hutton, agreed to pay Smith cash, not through the company payroll, to avoid the subpoena.  The cash came from Satnes's personal funds.  (Tr. 90).  "It's just what I could come up with real quick" (Ex. 9 at p. 1).

This is not simply a lawyer misdeed.  All the Respondents broke the law, each committing overt acts in furtherance of the conspiracy, the goal of which was to prevent the service of a subpoena on a relevant witness.  All Respondents should be sanctioned.

      B.     The evidence against Doyle.

Doyle testified that former 4 Star employee Corey Enty was deposed on December 8, 2022.  He acknowledged that United Fire's lawyer informed him that United Fire would call Smith as a witness on January 1, 2023.  (Tr. 112-113).

Smith testified that several months before June 2023 he had a telephone conversation with Doyle to discuss his potential testimony.  (Tr. 41).  This telephone conversation lasted 30 to 40 minutes.  (Tr. 42).  Doyle testified he did not remember this telephone conversation.  (Tr. 100).

Doyle's testimony is not credible.  He knew in January that United Fire would call Smith as a witness.  Any competent lawyer for 4 Star would, of course, interview Smith to find out what he had to say.  Of course Doyle remembers this interview.  It was only after this interview that Doyle made the decision to instruct Smith to flee the jurisdiction.  That decision was not made in a vacuum.  It was based on Doyle's understanding of Smith's potential testimony.  He told Smith:  "the only way they can get that evidence is through you . . . I don't think it's beneficial to our case."  (Tr. 50).

Doyle's intent was clearly stated:  "We're trying to prevent you from testifying at trial."  (Tr. 51).

Doyle received copies of the subpoena from the office of United Fire's lawyer on May 30, 2023.  (Tr. 99).  He decided to act on that subpoena as soon as it was received and that action was the intentional tampering with a witness.  If Doyle's testimony is to be believed, that he was only trying to buy time, this is all the more egregious.  He claims to have a valid basis to prevent Smith from testifying, but instead of pursuing that legitimate action, he chose the illegal one.  Doyle testified that he planned to file a motion to quash and offer a more knowledgeable witness.  (Tr. 108-109).  This is no justification at all.  Service of the subpoena had nothing to do with filing the motion to quash or contacting opposing counsel.  He could have done either of those things regardless of the status of the subpoena.

Doyle testified that he did not want Smith talking to a process server because of concerns regarding 4 Star's dispute with a competitor, Smith's current employer Republic Roofing.  (Tr. 101-104).  This is, of course, no justification for inducing a witness to avoid a lawful subpoena.  If that was truly his intent, then Smith's interaction with a process server could have been completely avoided by Doyle's agreement to accept the subpoena and make Smith available for trial, subject to filing a motion to quash.  The risk that an employee witness may have information harmful to his

employer is a risk inherent in litigation and trial practice.  All lawyers must deal with that risk in any case involving corporate parties.  This risk in no way justifies tampering with a witness.

III.
LEGAL ANALYSIS

A.    Factors for sanctions.

The federal courts have the inherent power to issue sanctions for abusive litigation practice undertaken in bad faith.  Gregory P. Joseph, Sanctions:  The Federal Law of Litigation Abuse § 26(A) (6th ed. 2020); Chambers v. NASCO, Inc., 501 U.S. 32, 111 S. Ct. 2123 (1991).

This Court has wide latitude and considerable discretion in a decision to impose sanctions. The Eighth Circuit gives "substantial deference to the district court's determination as to whether sanctions are warranted because of its familiarity with the case and counsel involved."  Willhite v. Collins, 459 F.3d 866, 869 (8th Cir. 2006).  Sanctions serve the dual purposes of punishment and deterrence.  Chrysler Corp. v. Carey, 186 F.3d 1016, 1022 (8th Cir. 1999) citing Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 96 S. Ct. 2778 (1976).

B.    Respondents' defenses.

1.    The no harm defense.

If this case is ultimately tried on the merits, then Respondents' witness tampering conduct is admissible.  Great Am. Ins. Co. v. Horab, 309 F.2d 262, 264 (8th Cir. 1962); see also, Ty Inc. v. Softbelly;s Inc., 353 F.3d 528 (7th Cir. 2003).

It could be argued that United Fire is helped, not hurt, by the admissible evidence of Respondents' witness tampering.  However, this is an unknowable conclusion.  One thing is known, the controversy and chaos surrounding Smith's testimony will necessarily detract from the substantive issues.  Smith's credibility will be at issue, and 4 Star will be sure to attack his credibility at trial.  This controversy may well prejudice United Fire.

But whether United Fire is directly prejudiced by the witness tampering is not the relevant consideration.  The harm to the system of justice and the integrity of the Court justifies sanctions.

> The fact that the abusive litigation conduct did not succeed in disrupting the litigation before the sanctioning court does not preclude the imposition of an appropriate sanction if the conduct was intended to do so.  Enmon v. Prospect Capital Corp., 675 F.3d 138 (2d Cir. 20212) ("We read Chambers to mean that sanctions may be warranted even where bad-faith conduct does not disrupt the litigation before the sanctioning court.  This accords with out sanctions jurisprudence, which counsels district courts to focus on the purpose rather than the effect of the sanctioned attorney's activities"); Fuery v. City of Chicago, 900 F.3d 450 (7th Cir. 2018) ("Although part of a court's consideration should be on the impact or effect that the conduct had on the course of the litigation, there is no requirement that the district court find prejudice.")

Gregory P. Joseph, Sanctions:  The Federal Law of Litigation Abuse § 26(A)(1) (6th ed. 2020).

> 2.    The irrelevant defense.

Smith started work for 4 Star in September 2021.  (Tr. 30).  The Stainless project which is at issue in this case had just started when Smith began employment.  (Tr. 32).  Smith was on the project daily from September 2021 until substantial completion in January 2023.  (Tr. 35).  He was the project manager.  (Tr. 36).  He was the only 4 Star employee on the project.  (Tr. 36).  He managed the work of all of the subcontractors.  (Tr. 37).  He was required to approve their work, that it met plans and specifications.  (Tr. 38).  Smith had direct knowledge of 4 Star's overhead.  4 Star claims that it is owed additional money by way of profit and overhead allegedly not compensated by United Fire.  The primary difference between 4 Star's and United Fire's estimates of cost was overhead and profit.  Smith testified that he had direct knowledge of the company resources devoted to the project, such as no project trailer and the number of employees involved. (Tr. 39).

4 Star's irrelevant defense reflects a fundamental difference between the parties on trial strategy. 4 Star proposes to try the case with only evidence of cost estimates, even though all

construction on the project is complete. United Fire intends to try the case by emphasizing the actual work required to complete the project, the actual costs associated with that work, and the 4 Star resources devoted to the project.  Smith possesses relevant knowledge of the actual work performed and costs incurred on the project.  The argument that Smith's testimony is irrelevant ignores United Fire's trial strategy. United Fire is entitled to try the case the way it sees fit, and to subpoena the witnesses essential to this trial strategy.

      C.    <u>Appropriateness of dismissal.</u>

    "The courts' authority to dismiss an action, pleading, claim or defense under their inherent power or, alternatively, to enter a default judgment is well-settled."  Gregory P. Joseph, <u>Sanctions: The Federal Law of Litigation Abuse</u> § 26(A)(1) (6th ed. 2020).

    The conduct of Respondents is so blatantly unlawful and in bad faith that dismissal of the Complaint is warranted.  It is only through this sanction that the dual purposes of punishment and deterrence can be fulfilled.  This Court cannot allow subversion of justice by witness tampering to occur in its Court.  When it does find such conduct, the litigants should not be permitted to move forward with its Complaint.  This appropriately punishes 4 Star, as it loses the right to prosecute this case.  It also deters future would be wrongdoers.  As the United States Supreme Court has expressed:

> But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.  If the decision of the Court of Appeals remained undisturbed in this case, it might well be that These respondents would faithfully comply with all future discovery orders entered by the District Court in this case. But other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts.  Under the circumstances of this case, we hold that the District Judge did not abuse his discretion in finding bad faith on the part of these respondents, and concluding that the extreme sanction of dismissal was appropriate in this case by reason of respondents' "flagrant bad faith"

and their counsel's "callous disregard" of their responsibilities.

Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643, 96 S. Ct. 2778, 2781 (1976).

       D.       Other potential sanctions.

The wide range of sanctions available to the Court pursuant to its inherent power are set forth in Joseph at § 28(B).  In addition to dismissal, some monetary penalty would be justified based on the authorities discussed in that section of Joseph.

A similar case was decided by Judge Perry in the Eastern District of Missouri.  Synergetics, Inc. v. Hurst, No. 4:04CV318CDP, 2007 WL 2422871 (E.D. Mo. Aug. 21, 2007).  In that case, plaintiff obtained a judgment following jury trial of $2,345,533.  After trial, the defendant uncovered evidence that plaintiff had persuaded a witness not to testify in exchange for a favorable settlement in another matter.  The witness had been deposed and his deposition was read at trial.  As 4 Star argues here, the plaintiff in that case argued "no harm no foul" because the witness's deposition testimony was heard by the jury.  Unlike this case, the witness was not under subpoena.  He had agreed to voluntarily testify.  The Court noted:  "It is a federal crime to give a witness something of value to induce the witness not to testify."  The Court recognized that the witness's testimony may well have hurt "the defendant's case."  But, because of the admission of the evidence that the witness had been induced not to testify at any new trial, "it would be very difficult for a jury to sort out the truth from the many conflicting stories that have already been told."  Despite these factors, the Court ruled that the plaintiff's conduct was sanctionable, and required it to pay $1,172,776, half the judgment amount, to the defendant.  Synergetics, Inc. v. Hurst, No. 4:04CV318CDP, 2007 WL 2422871, at *1 (E.D. Mo. Aug. 21, 2007).

IV.

CONCLUSION

The Respondent's actions were in bad faith.  There is no other conclusion that can be

11 of  12

reached.  Their actions constituted a crime.  It was a blatant effort to prevent United Fire from receiving a fair trial.  The Court should sanction Respondents.

DAVID M. DONOVAN
BAR NO. 81184
TAYLOR N. WILLIAMS
BAR NO. 2018132
ATTORNEYS FOR DEFENDANT
WATTS, DONOVAN, TILLEY & CARSON, P.A.
2120 RIVERFRONT DR., STE. 275
LITTLE ROCK, AR  72202
TELEPHONE:  (501) 372-1406
EMAIL:  david.donovan@wdtc.law
        taylor.williams@wdtc.law